EXHIBIT 1

**CARPENTER LAW GROUP**
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6994
Facsimile: 619.756.6991
todd@carpenterlawyers.com

**PATTERSON LAW GROUP**
James R. Patterson (CA 211102)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6690
Facsimile: 619.756.6991
jim@pattersonlawgroup.com

Attorneys for Plaintiff

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

OCT 17 2014

Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| RYAN VIGIL, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>APPLIED NUTRITION, INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: BC 560924<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br>1. **Bus. & Professions Code §17200, et seq.;**<br>2. **Cal. Civil Code §1750 et seq.;**<br>3. **Breach of Express Warranty**<br><br>**Judge:**<br><br>**Courtroom:** |

Plaintiff RYAN VIGIL, on behalf of himself and all others similarly situated, complains and alleges upon information and belief based, among other things, upon the investigation made by Plaintiff by and through his attorneys, as follows:

**INTRODUCTION**

1. Defendant distributes, markets, and sells "Libido-Max", a line of over the counter dietary supplements for men which Defendant claims, via Libido-Max marketing, will enhance the sexual performance of its users. Defendant represents that the primary ingredients in Libido-Max include "Horny Goat Weed" (Epimedium sagittatum), "Maca powder," "L-arginine," "Ashwagandha powder," "Tribulus extract" and "Soy." Defendant also represents, via an extensive and uniform nation-wide advertising campaign, that Libido-Max "enhances [sexual] drive and desire," "supports a strong, healthy libido," and promotes "sexual performance and enjoyment." Moreover, the packaging of Libido-Max states that the product is a "Doctor Developed Male Libido Formula that works FAST." Defendant has also represented, on the packaging of Libido-Max, that, "L-arginine may dilate blood vessels helping to enhance penile blood flow." *See generally* Exhibit, "A: Product Label.

2. All available, reliable, scientific evidence demonstrates that Defendant's Libido-Max products have no efficacy at all regarding the sexual health and performance benefits of consuming Libido-Max. In fact, even a cursory examination of reliable scientific evidence relating to Defendant's representations strongly indicates it is ineffective in strengthening the libidos of its users. Multiple valid scientific studies have been conducted on the aforementioned primary ingredients in Libido-Max, and these studies have revealed that the ingredients in question are not reliable means of strengthening libido, or promoting sexual performance and enjoyment.

3. On the Libido-Max product packaging, Defendant represents that research suggests L-arginine, a primary ingredient of Libido-Max,"…may dilate blood vessels helping to enhance penile blood flow. Good blood vessel function is an essential element of generating and maintaining erections." *See* product label, attached as Exhibit "A". Through this representation, Defendant is strongly implying, if not explicitly claiming, that Libido-Max is able to improve male sexual function and enjoyment.

4. Moreover, on the very front of the Libido-Max packaging, Defendant states that the product is able to "INCREASE BLOOD FLOW." *Id.* When read in conjunction with Defendant's representation that enhanced penile blood flow is "essential" to producing and maintaining erections (which is also listed on the product packaging), it is clear that by stating that Libido-Max "INCREASE[S] BLOOD FLOW," Defendant seeks to imply that consuming Libido-Max is able to

improve male sexual function, desire, performance and enjoyment.

5. Defendant conveys its deceptive representations to consumers through the use of various media platforms including its website and online promotional materials. More importantly, Defendant communicates its misleading representations about the efficacy of Libido-Max at the point of purchase. Misrepresentations about Libido-Max are prominently displayed on the front of the product's packaging/labeling where it cannot be missed by consumers. The front of the Libido-Max product label states in bold print that the product, "ENHANCES(S) DRIVE & DESIRE," "INCREASE[S] BLOOD FLOW," and leads to "LONGER PERFORMANCE & STAMINA." The front of the product label also states that Libido-Max is "FAST ACTING" The only reason a consumer would purchase Libido-Max is to obtain the advertised sexual health and performance benefits, which Libido-Max does not provide.

6. As a result of Defendant's deceptive advertising and false representations regarding the efficacy of Libido-Max, Plaintiff and the proposed class have purchased a product which does not perform as represented and they have been harmed in the amount they paid for the product, which, in the Plaintiff's case is approximately $18.00 per 75 count bottle.

7. Plaintiff brings this action on behalf of himself and other similarly situated consumers who have purchased Defendant's Libido-Max product to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased this product. Based on violations of state unfair competition laws and Defendant's breach of express warranty, Plaintiff seeks injunctive and monetary relief for consumers who purchased Libido-Max.

**JURISDICTION AND VENUE**

8. Plaintiff is informed and believes that Defendant's principal place of business is in Los Angeles, California. Defendants have accepted credit cards for the transaction of business throughout California, including the County of Los Angeles which has caused both obligations and liability of Defendant to arise in the County of Los Angles.

9. This Court has jurisdiction over Defendant and the claims set forth below pursuant to Code of Civil Procedure §410.10 and the California Constitution, Article VI §10, because this case is a cause not given by statute to other trial courts.

10. The amount in controversy exceeds the jurisdictional minimum of this Court.

**PARTIES**

11. Plaintiff Ryan Vigil resides in San Diego County, California. In or around July of 2014, Plaintiff was exposed to and saw Defendant's representations regarding the sexual health and performance benefits of Libido-Max by reading the Libido-Max product label in the CVS retail store located at 8831 Villa La Jolla Drive, La Jolla CA 92037. In reliance on the claims listed on the product label described herein and above, Plaintiff purchased the Libido-Max product at the previously described CVS retail store. He paid approximately $18.00 for the product. At the time, Plaintiff desired to enhance his sexual experience and enjoyment. He purchased Libido-Max believing it would provide the advertised sexual health and performance benefits. As a result, Plaintiff suffered injury in fact and lost money. Had Plaintiff been aware of Defendant's misrepresentations and omissions, he would not have purchased Libido-Max.

12. Defendant is a Limited Liability Company organized and existing under the laws of California. Defendant's headquarters and principle place of business is at 5310 Beethoven Street, Los Angeles, CA 90066. Defendant manufactures, advertises, markets, distributes, and/or sells Libido-Max to tens of thousands of consumers in California and throughout the United States.

**FACTUAL ALLEGATIONS**

13. Defendant has distributed, marketed, and sold the Libido-Max product on a nation-wide basis. Libido-Max is sold at a variety of grocery chains and low cost retailers, including CVS and Walgreens. Libido-Max is available in packages of 30 and 75 soft-gel tablets. Plaintiff purchased a package containing soft-gel tablets for approximately $18.00. The Libido-Max package prominently displays Defendant's representation that the Libido-Max ingredient "L-arginine" may be able to help men generate and maintain erections, and the representations that Libido-Max "ENHANCE(S) DRIVE AND DESIRE," "INCREASE[S] BLOOD FLOW," and allows its users to enjoy "LONGER PERFORMANCE & STAMINA.".

14. Defendant aggressively and uniformly represented, via its nation-wide advertising efforts, and on its product packaging, that Libido-Max is able to provide its users with various benefits relating to sexual health and performance (e.g. "generating and maintaining erections," longer sexual performance

and stamina, enhanced sexual drive and desire, "FAST-ACTING" results, etc.). *See* product label, attached as Exhibit "A."   The product label also warrants that Libido-Max, "supports a strong, healthy libido promoting sexual performance and enjoyment," *Id.* As more fully set forth herein, the scientific evidence regarding the use of the vast majority of the ingredients comprising Libido-Max, taken alone or in combination with other ingredients, does not provide **any** of the sexual health and performance benefits represented by Defendant. Moreover, the minimal amount of remaining ingredients taken by themselves, or in combination with one another are not sufficient to achieve the results that Defendant represents.

15.    Defendant has consistently communicated the message to consumers throughout the United States, including California, that Libido-Max strengthens the libido, facilitates the generation and maintenance of erections, and leads to longer sexual performance and stamina.  Libido-Max does not produce any of these results.  Defendant's claims regarding the sexual health and performance benefits of Libido-Max, as well as its claim that Libido-Max is "FAST-ACTING" are false, misleading and deceptive. Not only does Libido-Max fail to provide the advertised benefits in a "fast-acting" manner, Libido-Max does not provide its users with any of these benefit at any point.

16.    According to the label on the Libido-Max package, Libido-Max is comprised of certain primary ingredients including, "Horny Goat Weed," "Maca powder," "L-arginine," "Ashwagandha powder," "Tribulus extract," and "Soy." *See* product label, attached as Exhibit "A." As will be discussed below, reliable scientific research indicates that these ingredients are not able to produce the sexual health and performance benefits that Defendant advertises. Moreover, soy may actually have an adverse impact on the sexual potency of males who consume it.

17.    Scientific research has shown that Horny Goat Weed is an ineffective means of addressing erectile dysfunction. Popular medications such as Viagra treat erectile dysfunction by inhibiting cGMP-phosphodiestrase-5    (PDE5).    71(9)    J.    Nat.    Prod.    1513-1517    (2008).    *See* http://pubs.acs.org/doi/full/10.1021/np800049y. In 2008, researchers found that the inhibitory potency of icariin, the active compound in Horny Goat Weed, is 80 times lower than that of Viagra. *Id.*

18.    The Libido-Max label indicates that "Horny Goat Weed" is part of a group of ingredients that make up the product's "Stamina and Extending Blend." *See* product label, attached as Exhibit "A."

The name of this ingredient blend suggests that the ingredients included in the blend are designed to interact with one another in a manner that leads to greater sexual stamina, extends the duration of a man's sexual experience, and/or allows a man to generate or maintain an erection. There is no evidence to suggest that Horny Goat Weed increases sexual stamina or the duration of its users' sexual experiences. Moreover, as the 2008 study shows, Horny Goat Weed possesses .0125% of the potency of Viagra. Therefore it can not be said that consuming Horny Goat Weed is an effective means of generating or maintaining erections. Scientific research clearly indicates that including Horny Goat Weed in Libido-Max has no impact on the product's ability to achieve the sexual health and performance benefits that Defendant advertises.

19. It is difficult to imagine why Defendant chose to add Maca powder to Libido-Max's Stamina and Extension Blend, as a 2010 review of the impact of Maca root revealed that the ingredient has little effect on sexual function. 10(44) BMC Complementary and Alternative Medicine (2010). *See* http://www.biomedcentral.com/1472-6882/10/44. Defendant's decision to include this ingredient might be based on a legend that ancient Incan warriors would consume Maca root before battle, resulting in a drastic increase in their combat skills and a strengthening of their libidos. *See, e.g.*, http://www.envirohealthtech.com/maca_article.htm. In any case, scientific evidence clearly demonstrates that Maca powder does not possess the ability to increase the sexual stamina or strengthen the libidos of those who consume it, any more than it possess the ability to provide those who consume it with the combat skills of a legendary Incan warrior.

20. As discussed above, the Libido-Max package prominently displays a claim that L-arginine, an ingredient in the product's "Power Max" blend, may assist men in generating and maintaining erections. *See* product label, attached as Exhibit "A." Medications such as Viagra and Cialis increase Nitric oxide (NO) levels in the body. Nitric oxide functions by relaxing the muscles that cause erections to occur. Although L-arginine can be enzymatically processed to increase NO levels in some circumstances, by itself L-arginine does not increase the activity of NO synthase activity, as Viagra and Cialis do. In a 2003 study, researchers found that subjects who were given L-arginine by itself did not demonstrate an improvement in erectile function. 29 J. Sex & Marital Therapy 207 (2003). Although Defendant includes L-arginine in its Power Max ingredient blend, there is no evidence that consuming L-

arginine will allow men to maximize their sexual "power" or functionality, even if these men consume this ingredient in conjunction with NADH (the second ingredient in the Power Max Blend).

21.     Furthermore, Libido-Max includes "Tribulus extract" in its Libido Boosting Blend, and Ashwagandha powder in its Stamina and Extending Blend. *See* product label, attached as Exhibit "A." However, according to the NYU Langone Medical Center, there is no real evidence that these ingredients improve sexual function in men. *See* http://www.med.nyu.edu/content?ChunkIID=21720.

22.     In addition, Libido-Max contains an unspecified amount of soy. *See* product label, attached as Exhibit "A." The NYU Langone Medical Center warns that soy may reduce testosterone levels in men. *See* http://www.med.nyu.edu/content?ChunkIID=21720. Not only does Libido-Max contain ingredients that do not provide the sexual health and performance benefits that Defendant advertises, Libido-Max contains an ingredient that may even reduce the testosterone levels of the very men who rely on this product to enhance the sexual potency.

23.     Defendant separates most of Libido Max's ingredients (1841 mg.) into the three individual blends (i.e. the Stamina and Extending Blend, the Libido Boosting Blend, and the Power Max Blend). However, the remaining 10 mg. of the product's primary ingredients comprise what Defendant refers to as the "Bioperine Complex." The Bioperine Complex's ingredients represent a mere .0005% of Libido-Max's primary ingredients. Such an infinitesimal portion of ingredients will not produce the results that Defendant advertises. This reality remains true, even if the Bioperine Complex is consumed in conjunction with the ingredient blends that make up Libido-Max, as many of these blends contain ingredients that are scientifically proven to have no sexual health and performance benefits.

24.     Although Defendant represents that Libido-Max can enhance the sexual stamina and performance of its users, assist its users in achieving and maintaining erections, strengthen the libidos of its users, and increase the sexual enjoyment of its users, as discussed above, reliable scientific research reveals that many of the product's primary ingredients do not produce results that validate these representations. The fact that many of the primary ingredients of Libido-Max are not able to achieve the results that Defendant advertises when consumed individually, or in conjunction with one another, demonstrates the inefficacy of this product. Furthermore, Libido-Max contains an unspecified quantity of soy, which may actually *decrease* the testosterone levels of the men who consume it.

25. Plaintiff and Class members have been and will continue to be deceived or misled by Defendant's deceptive claims regarding the alleged sexual health and performance benefits of using Libido-Max. Plaintiff purchased and consumed Libido-Max during the Class period and in doing so, read and considered the sexual health and performance benefit representations on the Libido-Max product packaging and based his decisions to purchase Libido-Max based on these claims. Plaintiff based his purchase decision in large part on the representation that Libido-Max would enhance his sexual performance and enjoyment. Defendant's claim that using Libido-Max would indeed "improve [his] sexual performance and enjoyment" was a material factor in influencing his decision to purchase and use Libido-Max. *See* product label, attached as Exhibit "A." Plaintiff would not have purchased Libido-Max had he known that the product does not provide the represented enhanced sexual performance and enjoyment. Representative Product Packaging Labels are attached as Exhibit, "A".

26. As a result, of Defendant's representations regarding the sexual health and performance benefits of Libido-Max, Plaintiff and the Class members have been damaged by their purchases of Libido-Max and have been deceived into purchasing a product that they believed, based on Defendant's representations, would allow them to enjoy an enhanced sexual experience, when in fact, it does not.

27. Defendant has reaped enormous profits from its false marketing and sale of the Libido-Max.

## CLASS DEFINITION AND ALLEGATIONS

28. Plaintiff seeks certification of a Class pursuant to Cal. Civ. Pro. §382 which Class is defined as follows:

> **<u>Nation-wide Class Action</u>**
> **All consumers who purchased Libido-Max in the United States, within the applicable statute of limitations, for personal use until the date notice is disseminated.**
>
> **Excluded from this Class is Defendant and its officers, directors, and employees, and those who purchased Libido-Max for the purpose of resale.**

29.     The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Defendant's records and the records of retailers who sell Defendant's products.

30.     The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class members, paid for a supplement that had no value, did not provide the benefits or claims as advertised and has been harmed in the amount of the purchase price of the product.  The factual basis of the misconduct is common to all Class Members as all Class Members saw, reviewed and relied upon the representations made on the product packaging in order to make an informed purchase.

31.     There numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

32.     whether the claims discussed above are true, or are misleading, or objectively reasonably likely to deceive;

(a)     whether Defendant's alleged conduct violates public policy;

(b)     whether the alleged conduct constitutes violations of the laws asserted;

(c)     whether Defendant engaged in false or misleading advertising;

(d)     whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss; and

(e)     whether Plaintiff and Class members are entitled to other appropriate remedies, including corrective advertising and injunctive relief.

28.     ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Defendant's deceptive sexual health and performance benefit claims that accompanied each and every bottle of Libido-Max that Defendant sold.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

29.     ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained counsel experienced in complex consumer class action

litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

30. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

31. The Class also may be certified because Defendant acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

32. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiff and Class members.

33. Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and Class members. Additionally, unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

**FIRST CAUSE OF ACTION**
**(Violation of Business & Professions Code §17200, *et seq*.)**

34.     Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

35.     Plaintiff brings this claim on behalf of himself and on behalf of the Class. As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendant's conduct because he purchased Libido-Max in reliance on Defendant's sexual health and performance claims, including *inter alia*, that Libido-Max:

- "Enhance[s] drive and desire;"
- "increases blood flow;"
- allows for "longer performance and stamina;"
- is "fast-acting;"
- that consuming L-arginine may improve one's ability to generate and maintain an erection; and
- that consuming Libido-Max will lead to "a strong, healthy libido promoting sexual performance and enjoyment,"

(*See* Exhibit, "A") but Plaintiff did not receive "fast-acting" benefits. Plaintiff did not receive any benefits at all.

36.     The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), and similar laws in other states, prohibit any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.   In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the above referenced claims in paragraph 63 and as alleged throughout herein (which also constitutes advertising within the meaning of §17200) and omissions of material facts related to the numerous scientific studies which demonstrate no sexual health and performance benefits derived from the consumption of many of the primary ingredients present in Libido-Max, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200, et seq., 17500, et seq., and the common law.

37.     Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

38.     Defendant's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendant engaged in false advertising, misrepresented and omitted material facts regarding Libido-Max, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

39.     As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws in California and other states, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, et seq.

40.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

41.     Business & Professions Code §17200, et seq. also prohibits any "fraudulent business act or practice."

42.     Defendant's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

43.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and other members of the Class who each purchased Libido-Max. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

44.     As a result of its deception, Defendant has been able to reap unjust revenue and profit.

45.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

46.     Plaintiff, on behalf of himself, all others similarly situated, and the general public, seeks restitution and disgorgement of all money obtained from Plaintiff and the members of the Class collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices,

corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

**SECOND CAUSE OF ACTION**
**(Violations of the Consumers Legal Remedies Act –**
**Civil Code §1750 *et seq.*)**

47. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

48. Plaintiff brings this claim individually and on behalf of the Class.

49. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, et seq. (the "Act") and similar laws in other states. Plaintiff is a "consumer" as defined by California Civil Code §1761(d). Libido-Max is a "good" within the meaning of the Act.

50. Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Libido-Max product:

(5) Representing that [Libido-Max has]. . . characteristics, . . . uses [and] benefits . . . which [it does] not have . . . .

* * *

(7) Representing that [Libido-Max is] of a particular standard, quality or grade . . . [when it is] of another.

* * *

(9) Advertising goods . . . with intent not to sell them as advertised.

* * *

(16) Representing that [Libido-Max has] been supplied in accordance with a previous representation when [it has] not.

51. Defendant violated the Act by representing and failing to disclose material facts on the Libido-Max labeling and packaging and associated advertising, as described above, when it knew, or

should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

52. Pursuant to §1782(d) of the Act, Plaintiff and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

53. If Defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, Plaintiff will amend this complaint to add claims for actual, punitive and statutory damages, as appropriate. *See* Exhibit "B" – CLRA warning letter.

54. Defendant's conduct is fraudulent, wanton and malicious.

**THIRD CAUSE OF ACTION**
**(Breach of Express Warranty)**

55. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

56. Plaintiff brings this claim individually and on behalf of the Class.

57. The Uniform Commercial Code section 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

58. At all times, California and other states have codified and adopted the provisions in the Uniform Commercial Code governing the express warranty of merchantability.

59. As discussed above, Defendant expressly warranted on each and every label of Libido-Max that the product lived up to the represented sexual health and performance benefits described herein and listed on the product packaging and labels. The sexual health and performance benefit claims made by Defendant are affirmations of fact that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendant's representations.

60. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

61. Defendant was provided notice of these issues by, *inter alia*, the instant Complaint.

62.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing a product that provided sexual health and performance benefits, an enhanced ability to achieve and maintain erections, a strengthened libido, or fast-acting results as represented.

63.     As a result of Defendant's breach of their contract, Plaintiff and the Class have been damaged in the amount of the price of the products they purchased.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment:

A.     Certifying the Class as requested herein;

B.     Awarding Plaintiff and the proposed Class members damages;

C.     Awarding restitution and disgorgement of Defendant's revenues to Plaintiff and the proposed Class members;

D.     Awarding actual, punitive and statutory damages to Plaintiff and the proposed Class members;

E.     Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money they are required to pay;

F.     Ordering Defendant to engage in a corrective advertising campaign;

G.     Awarding attorneys' fees and costs;

H.     Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of her claims by jury to the extent authorized by law.

Dated: October 17, 2014

**CARPENTER LAW GROUP**

By: ______________________

Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6994
Facsimile: 619.756.6991
todd@carpenterlawyers.com

**PATTERSON LAW GROUP**
James R. Patterson (CA 211102)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6990
Facsimile: 619.756.6991
jim@pattersonlawgroup.com

Attorneys for Plaintiff

# EXHIBIT A

Satisfaction GUARANTEED!
FAST-ACTING
LIBIDO-MAX
POWER EXTENDING FORMULA
Doctor Developed
Male Enhancement
3-STAGE SEXUAL RESPONSE:
ENHANCE DRIVE & DESIRE*
INCREASE BLOOD FLOW*
LONGER PERFORMANCE & STAMINA*
75 FAST-ACTING LIQUID SOFT-GELS
DIETARY SUPPLEMENT

Satisfaction GUARANTEED!
FAST-ACTING
LIBIDO-MAX
POWER EXTENDING FORMULA
Doctor Developed
Male Enhancement
3-STAGE SEXUAL RESPONSE:
30 FAST-ACTING LIQUID SOFT-GELS
DIETARY SUPPLEMENT

## Libido-Max - Power Extending Formula

**DIRECTIONS:** (Adult) For daily maintenance, take one (1) to four (4) Liquid Soft-Gels in divided doses. For a more immediate response prior to intimacy, take up to four (4) Liquid Soft-Gels one hour before activity. Do not exceed 4 Liquid Soft-Gels per day.

### Supplement Facts

Serving Size: 4 Liquid Soft-Gels
Servings per Container: 18

| | Amount per Serving |
|---|---|
| **Stamina & Extending Blend** Maca powder (root), Ashwagandha powder (root), Dimethylglycine (DMG), CDP-Choline | 760 mg |
| **Libido Boosting Blend** Epimedium (*Epimedium sagittatum*) (Horny Goat Weed) extract (10% icariin)(aerial), Tribulus extract (40% saponins)(plant), Yohimbe extract (2% total alkaloids)(bark), L-Tyrosine | 740 mg |
| **Power Max Blend** L-Arginine (as L-Arginine Hydrochloride), NADH (Nicotinamide Adenine Dinucleotide) | 341 mg |
| **Bioperine Complex** Ginger extract (5% gingerols)(root), Long Pepper extract (1.5% piperine)(fruit), Bioperine® Black Pepper extract (95% piperine)(fruit) | 10 mg |

Other Ingredients: Soy bean oil, gelatin, glycerin, purified water, beeswax, soy lecithin, caramel color and St. John's bread.

**Contains: Soy**

**BIOPERINE** is a registered trademark of Sabinsa Corporation.

**Usage Warnings:** Do not use if seal is broken. This product contains ingredients that may affect blood pressure and/or heart conditions. Check with your doctor before using and engaging in activity if you have heart disease, high blood pressure or other medical conditions. Do not use if pregnant or nursing. Do not exceed recommended daily intake. Not intended for use by persons under 18 years of age. **KEEP OUT OF THE REACH OF CHILDREN.** Store in a cool, dry place.

**WARNING:** (State of California Prop 65) This product contains a chemical known to the State of California to cause birth defects or other reproductive harm.



LIBIDO-MAX
Power Extending Formula!
Fast-Acting Liquid Soft-Gels
Recent scientific research suggests that L-Arginine may dilate blood vessels helping to enhance penile blood flow.* Good blood vessel function is an essential element of generating and maintaining erection.* When combined with targeted nutraceuticals, this 3-stage formula supports a strong, healthy libido promoting sexual performance and enjoyment.*
TARGETED 3 STAGE FORMULA:
STAGE ONE
Drive & Desire*
STAGE TWO
Increase Blood Flow*
STAGE THREE
Performance & Stamina*
GUARANTEE
If you are not satisfied with the results of Libido-Max you may return the unused portion of product along with your receipt. A check for your refund will be sent back to you with no questions asked. This unheard of guarantee is being offered because the developer of Libido-Max is so confident in the results the formula will provide.
Returns: P.O. Box 66457, Los Angeles, CA 90066



Works Fast!
Doctor Developed Male Libido Formula that works FAST
Liquid Soft-Gels
Easy-to-swallow Liquid Soft-Gels allow nutrients to be released fast for optimum results.
2
Patented Bioperine®
Bioperine® enhances the bioavailability, absorption and potency of many nutrients.*
Q
Why are Liquid Soft-Gels better than hard tablets or dry capsules?
A
Their nutrients are released fast for optimum results.
Fast Release
Hard Tablets
Dry Capsules
Liquid Soft-Gels
Questions: Contact Nutritional Support
Questions@AppliedNutrition.com
To join our Wellness Club and receive tips on how to improve your health, please visit us at www.AppliedNutrition.com/wellness1
Usage Warnings: Do not use if seal is broken. This product contains ingredients
that may affect blood pressure and/or heart conditions. Check with your doctor
before using and engaging in activity if you have heart disease, high blood pressure
or other medical conditions. Do not use if pregnant or nursing. Do not exceed
recommended daily intake. Not intended for use by persons under 18 years of age
KEEP OUT OF THE REACH OF CHILDREN. Store in a cool, dry place.
WARNING: (State of California Prop 65) This product contains a chemical known to
the State of California to cause birth defects or other reproductive harm.
*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease.

# EXHIBIT B

October 17, 2014

**VIA CERTIFIED MAIL (RETURN RECEIPT)**
**(RECEIPT NO. ___________________)**

Chief Executive Officer / President
Applied Nutrition
5310 Beethoven Street
Los Angles, California 90066

Re: Vigil v. Applied Nutrition

Dear Sir/Madame:

Our law firm and Carpenter Law Group represents Ryan Vigil and all other similarly situated California Residents in an action against Applied Nutrition arising out of, *inter alia*, misrepresentations, either express or implied to consumers that its Libido-Max line of dietary supplements, "enhances [sexual] drive and desire," "supports a strong, healthy libido," and promotes "sexual performance and enjoyment." Moreover, the packaging of Libido-Max states that the product is a "Doctor Developed Male Libido Formula that works FAST." Applied Nutrition has also represented, on the packaging of Libido-Max, that, "L-arginine may dilate blood vessels helping to enhance penile blood flow."

As you are aware, Applied Nutrition warranted on its product labeling that the claimed benefits can be received through the recommended consumption of its Libido-Max product. Mr. Vigil and others similarly situated purchased the Libido-Max products unaware that the representations found on the Products' labels and packages are false. Several clinical studies have found no causative link between the ingredients in the Libido-Max products and improved sexual desire, function, or enjoyment. The full claims, including the facts and circumstances surrounding these claims, are detailed in the Class Action Complaint, a copy of which is enclosed and incorporated by this reference.

Applied Nutrition's representations are false and misleading and constitute unfair methods of competition and unlawful, unfair, and fraudulent acts or practices, undertaken by Applied Nutrition with the intent to result in the sale of the Libido-Max products to the consuming public. .

This practice constitutes a violation of California Civil Code §1770(a) under, *inter alia*, the following subdivisions:

(5) Representing that [Libido-Max has] . . . characteristics, . . . uses [or] benefits. . . which [it does] not have.

* * *

(7) Representing that [Libido-Max is] of a particular standard, quality or grade, . . . if [it is] of another.

* * *

       (9)     Advertising goods . . . with the intent not to sell them as advertised.

* * *

       (16)    Representing that [Libido-Max has] been supplied in accordance with a previous representation when [it has] not.

California Civil Code §1770(a)(5)-(16).

Applied Nutrition's representations also constitute violations of California Business and Professions Code §17200, *et seq.*, and a breach of express warranties.

While the Complaint constitutes sufficient notice of the claims asserted, pursuant to California Civil Code §1782, we hereby demand on behalf of our clients and all other similarly situated California Residents that Applied Nutrition immediately correct and rectify this violation of California Civil Code §1770 by ceasing the misleading marketing campaign and ceasing dissemination of false and misleading information as described in the enclosed Complaint.  In addition, Applied Nutrition should offer to refund the purchase price to all consumer purchasers of these Products, plus reimbursement for interest, costs, and fees.

Plaintiffs will, after 30 days from the date of this letter, amend the Complaint without leave of Court, as permitted by California Civil Code §1782, to include claims for actual and punitive damages (as may be appropriate) if a full and adequate response to this letter is not received.  These damage claims also would include claims under already asserted theories of unlawful business acts, as well as the claims under the Consumers Legal Remedies Act.  Thus, to avoid further litigation, it is in the interest of all parties concerned that Applied Nutrition address this problem immediately.

Applied Nutrition must undertake all of the following actions to satisfy the requirements of California Civil Code §1782(c):

1.     Identify or make a reasonable attempt to identify purchasers of the subject Products who reside in California;

2.     Notify all such purchasers so identified that upon their request, Applied Nutrition will offer an appropriate correction, replacement, or other remedy for its wrongful conduct, which can include a full refund of the purchase price paid for such products, plus interest, costs and fees;

3.     Undertake (or promise to undertake within a reasonable time if it cannot be done immediately) the actions described above for all Libido-Max purchasers who so request; and

4. Cease from expressly or impliedly representing to consumers that these products are effective at improving or enhancing sexual function, performance or enjoyment. Inlcuding, refrain from making representations that Libido-Max, "enhances [sexual] drive and desire," "supports a strong, healthy libido," and promotes "sexual performance and enjoyment." Further, discontinue representing that the product is a "Doctor Developed Male Libido Formula that works FAST and that, "L-arginine may dilate blood vessels helping to enhance penile blood flow.".

We await your response.

Very truly yours,

James R. Patterson
For the Firm

Enclosures

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Todd D. Carpenter, Esq. # 234464
CARPENTER LAW GROUP
402 West Broadway, 29th Floor
San Diego, CA 92101
TELEPHONE NO.: 619-756-6994 FAX NO.: 619-756-6991
ATTORNEY FOR (Name): Plaintiff, Ryan Vigil

FOR COURT USE ONLY

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court
OCT 17 2014
Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME:

CASE NAME:
Ryan Vigil v Applied Nutrition, Inc., et al.

## CIVIL CASE COVER SHEET

[✓] Unlimited (Amount demanded exceeds $25,000)
[ ] Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: BC 560924
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [✓] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. [✓] Large number of separately represented parties
   - b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. [✓] Substantial amount of documentary evidence
   - d. [✓] Large number of witnesses
   - e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [✓] punitive
4. Number of causes of action *(specify)*: 3
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 10/17/2014
Todd D. Carpenter
(TYPE OR PRINT NAME)
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CIVIL CASE COVER SHEET
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

- 30 -

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

| SHORT TITLE: Ryan v Applied Nutrition, Inc. | CASE NUMBER BC 5 6 0 9 2 4 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☐ YES CLASS ACTION? ☑ YES LIMITED CASE? ☐ YES TIME ESTIMATED FOR TRIAL 3 ☐ HOURS/ ☑ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check one Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage<br>☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons<br>☐ A7240 Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall)<br>☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270 Intentional Infliction of Emotional Distress<br>☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |

| SHORT TITLE: Ryan v Applied Nutrition, Inc. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☑ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2.,3. |
| Employment | Wrongful Termination (36) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels______ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: Ryan v Applied Nutrition, Inc. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153 Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment | 2., 9. |
| | | ☐ A6160 Abstract of Judgment | 2., 6. |
| | | ☐ A6107 Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112 Other Enforcement of Judgment Case | 2., 8., 9. |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment | 2., 3., 9. |
| | | ☐ A6123 Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124 Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190 Election Contest | 2. |
| | | ☐ A6110 Petition for Change of Name | 2., 7. |
| | | ☐ A6170 Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100 Other Civil Petition | 2., 9. |

| SHORT TITLE: Ryan v Applied Nutrition, Inc. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br>☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | | | ADDRESS:<br>5310 Beethoven Street |
|---|---|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE: | |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the 90066 courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 10/17/2014

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).
5. Payment in full of the filing fee, unless fees have been waived.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

OCT 17 2014

Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

APPLIED NUTRITION, INC., and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

RYAN VIGIL, an individual, on behalf of himself and all others similarly situated,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Los Angeles Superior Court
111 North Hill Street
Los Angeles, CA 90012

CASE NUMBER: *(Número del Caso):* BC 560924

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Todd D. Carpenter, 402 West Broadway, 29th Floor, San Diego, Ca 92101 Phone: 619-756-6994

DATE: *(Fecha)* SHERRI R. CARTER Clerk, by *(Secretario)* M. Soto, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

OCT 17 2014

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Applied Nutrition Inc.

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**NOTICE OF CASE ASSIGNMENT – CLASS ACTION CASES**
**Case Number** ______________________

BC 5 6 0 9 2 4

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**
**Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).**

| | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|
| | Judge Elihu M. Berle | 323 | 1707 |
| | Judge William F. Highberger | 322 | 1702 |
| X | Judge John Shepard Wiley, Jr. | 311 | 1408 |
| | Judge Kenneth Freeman | 310 | 1412 |
| | Judge Jane Johnson | 308 | 1415 |
| | Judge Amy D. Hogue | 307 | 1402 |
| | OTHER | | |

## Instructions for handling Class Action Civil Cases

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

**APPLICATION**
The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**
The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**
A challenge under Code of Civil Procedure section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**
Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**
The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

**SANCTIONS**
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

Given to the Plaintiff/Cross-Complainant/Attorney of Record on ____________ SHERRI R. CARTER, Executive Officer/Clerk

LACIV CCW 190 (Rev09/13)
LASC Approved 05-06
For Optical Use

SHERRI R. CARTER

By ______M. Soto______, Deputy Clerk

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS

Superior Court of California
County of Los Angeles

Los Angeles County
Bar Association
Litigation Section

Los Angeles County
Bar Association Labor and
Employment Law Section

Consumer Attorneys
Association of Los Angeles

Southern California
Defense Counsel

abtl

Association of
Business Trial Lawyers

California Employment
Lawyers Association

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | | CASE NUMBER: |

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at www.lasuperiorcourt.org under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to ____________ (INSERT DATE) for the complaint, and ____________ (INSERT DATE) for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR PLAINTIFF)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR DEFENDANT)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

Date:

____________________ (TYPE OR PRINT NAME) ➤ ____________________ (ATTORNEY FOR ____________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – DISCOVERY RESOLUTION** | | CASE NUMBER: |

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

  It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR PLAINTIFF)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ____________________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ____________________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ____________________)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | | CASE NUMBER: |

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: ________________ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: ________________ (insert date 20 calendar days following filing of the Request).
4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional): E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | | CASE NUMBER: |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR PLAINTIFF)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR DEFENDANT)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ________________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ________________)

Date:

(TYPE OR PRINT NAME) ➤ (ATTORNEY FOR ________________)

**THE COURT SO ORDERS.**

Date: ________________

JUDICIAL OFFICER