UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-04103 JAK (JCx) | Date | November 17, 2016 |
| Title | Ryan Vigil v. Irwin Naturals, et al. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:   (IN CHAMBERS) ORDER RE DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT (DKT. 1) AND REMANDING ACTION TO THE LOS ANGELES SUPERIOR COURT    **JS-6**

**I.    Introduction**

Ryan Vigil, a California resident, brought this action on behalf of a putative class of purchasers of "Libido-Max," a product marketed as one that enhances sexual performance. First Amended Complaint ("FAC"), Dkt. 1-3 ¶ 1. The only named defendant is Applied Nutrition Inc. ("Defendant"), a Nevada Corporation whose principal place of business is in California. *Id*. The FAC, which was filed on December 16, 2014, alleges that Defendant's advertising of Libido Max is deceptive, and that it includes claims that are unsupported by any medical evidence. *Id*. The FAC advances causes of action under Cal. Bus & Prof. Code §§ 17200 *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq., and for breach of express warranty. *Id.*

Plaintiff filed the action in the Los Angeles Superior Court on October 17, 2014. Complaint, Dkt. 1-2. Approximately 20 months later, on June 9, 2016, Defendant removed the action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and 1453(b). "Notice of Removal," Dkt. 1. The removal was effected more than a year after the FAC was filed in the Superior Court. Defendant claims that there is federal jurisdiction under CAFA because this is a putative class action in which: (1) the number of members of the proposed class is not less than 100; (2) the amount in controversy exceeds the sum or value of $5 Million, exclusive of interest and costs; and (3) at least one member of the proposed class is a citizen of a state other than the State of which Defendant is a citizen. 28 U.S.C. §§ 1332(d)(2) and (d)(5). Under CAFA, Defendants have the burden to show that removal is justified. *See Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006).

Following the removal, a Scheduling Conference was conducted on September 12, 2016. At that time, the Court, *sua sponte,* raised issues as to whether the basis stated as to the timing of the removal was reliable and consistent with the good faith requirements of Fed. R. Civ. P. 11. Specifically, issues were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV16-04103 JAK (JCx) | Date | November 17, 2016 |
|---|---|---|---|
| Title | Ryan Vigil v. Irwin Naturals, et al. | | |

raised as to whether Defendant had shown a good faith basis for the statement that it only learned recently that there are putative class members who are citizens of states other than California and Nevada. Because counsel for Defendants stated that these issues were unanticipated and would require input from his client, the Court permitted the submission of supplemental information in support of the stated basis for the timing of the removal. Minute Order re Scheduling Conf., Dkt. 13. Defendant filed that supplemental briefing ("Supplemental Brief") on September 22, 2016. Dkt. 14. Plaintiff has not taken any position on the issues.

For the reasons stated in this Order, this action is **REMANDED** to the Los Angeles Superior Court.

**II.     Removal Jurisdiction**

   **A.     Jurisdiction Requirements of the Class Action Fairness Act**

The elements of CAFA jurisdiction, for which Defendant has the burden of proof, have been shown. Thus, the cumulative sales of Libido-Max between October 2010 and October 2014, which is the proposed class period, are estimated to be more than $10 Million. Removal Notice, Dkt. 1 ¶ 16. Because the FAC seeks remedies, including restitution, the $5 Million jurisdictional requirement is satisfied. Defendant has also submitted a declaration from Lloyd Smith and one from Kurt Schultz, each of whom is a member of the putative class. Smith states that he is a citizen of Texas; Schultz states that he is a citizen of Minnesota. Smith Decl., Dkt. 1-16; Schultz Decl., Dkt. 1-17. Because Defendant is a Nevada Corporation with its principal place of business in California, the minimal diversity requirement under CAFA has also been shown. Dkt. 1 ¶ 19. Plaintiff has not challenged the factual basis for any of these elements.

   **B.     Timing of Removal under CAFA**

Under CAFA, a defendant may remove the matter within 30 days of when the grounds for removal are discovered. 28 U.S.C. § 1453(b); *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013). Defendant claims that it timely removed this action on June 9, 2016, because "until May 10, 2016, [Defendant] did not have information from which it could have ascertained that [Plaintiff's] case is one that is removable." Dkt. 1 ¶ 7. Specifically, Defendant claims that "May 10, 2016 was the date on which [Defendant] first obtained information showing that at least two of the putative class members . . . were not citizens of the State of California or the State of Nevada on October 17, 2014 when [Plaintiff] filed his Original Complaint." *Id*. These class members were identified after Defendant "was asked for the first time in late-April 2016 whether it possessed any information that could help determine an individual consumer's state of citizenship as of October 17, 2014, approximately 18 months earlier." Declaration of Jeanene Moenckmeier, the general counsel of Defendant, Dkt. 14-2, ¶ 6.

An untimely removal under CAFA does not bar the exercise of subject matter jurisdiction. *See, e.g., Maniar v. FDIC*, 979 F.2d 782, 784-85 (9th Cir.1992) (untimely removal is a procedural rather than jurisdictional defect). Thus, an untimely removal can be waived by the plaintiff. *See, e.g., Lively v. Wild Oats Markets*, *Inc.*, 456 F.3d 933, 939 (9th Cir. 2006) (non-substantive barriers to jurisdiction are

Case 2:16-cv-04103-JAK-JC   Document 15   Filed 11/17/16   Page 3 of 8   Page ID #:1688

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV16-04103 JAK (JCx) | Date | November 17, 2016 |
|---|---|---|---|
| Title | Ryan Vigil v. Irwin Naturals, et al. | | |

waivable); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir.1980) ("a party may waive the defect [of untimely removal] or be estopped from objecting to the untimeliness by sitting on his rights").

**III.     Analysis**

    **A.     Legal Standards**

In all federal, civil proceedings, counsel are subject to the requirements of Fed. R. Civ. P. 11. It provides:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11 is designed "to curb delay and expense caused by the filing of unsupported pleadings and motions." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986). This includes preventing "frivolous filings" and "misusing judicial procedures as a weapon for personal or economic harassment." *Id*. Under Rule 11, sanctions "shall be assessed if the paper filed in the district court and signed by an attorney or unrepresented party is frivolous, legally unreasonable, or *without factual foundation*, even though the paper was not filed in subjective bad faith." *Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir. 1987) (quoting *id*.) (emphasis in original).

Independent of Rule 11, attorneys are obligated to act honestly and with integrity. "An attorney does not simply act as an advocate for his client; he is also an officer of the court. As such, an attorney has a duty of good faith and candor in dealing with the judiciary." *United States v. Associated Convalescent Enterprises, Inc.*, 766 F.2d 1342, 1346 (9th Cir. 1985) (internal quotations omitted); *see generally* A.B.A. Model Rule of Professional Responsibility 3.3 ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-04103 JAK (JCx) | Date | November 17, 2016 |
| Title | Ryan Vigil v. Irwin Naturals, et al. | | |

These and related obligations are set forth in Local Rule 83-3.1.2, which is titled, "Standards of Professional Conduct - Basis for Disciplinary Action." The Rule provides:

In order to maintain the effective administration of justice and the integrity of the Court, each attorney shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California and contained in the State Bar Act, the Rules of Professional Conduct of the State Bar of California, and the decisions of any court applicable thereto. These statutes, rules and decisions are hereby adopted as the standards of professional conduct, and any breach or violation thereof may be the basis for the imposition of discipline. The Model Rules of Professional Conduct of the American Bar Association may be considered as guidance.

    B.    Application

The central issue presented is the credibility of Defendant's assertion that it did not know of a basis for jurisdiction under CAFA until May 10, 2016. It claims that it was on or about that date that it first determined that there was minimal diversity because at least two putative class members were citizens of states other than California and Nevada. Defendant claims that it made this determination more than 16 months after the action was filed in the Los Angeles Superior Court, and more than a year after the FAC was filed there.

After the action was filed in the Superior Court, proceedings were conducted there. These included the aforementioned filing of an amended complaint and the filing of an Answer by Defendant (Dkt. 1-4). Further, Superior Court Judge Wiley conducted a status conference on January 22, 2015, and additional conferences on July 24 and October 15, 2015. *See* Case No. BC560924, Superior Court of California, Los Angeles. http://www.lacourt.org/casesummary/ui/casesummary.aspx?#EVT.

On October 8, 2015, which was six months prior to removal, Defendant filed a motion for summary judgment. Dkt. 1-7 at 85. On the same day, Defendant filed a motion to deny class certification. *Id.* at 227, 255. The class certification issue was briefed pursuant to Cal. Code Civ. Proc. § 382. The required elements for class certification, which parallel those of Fed. R. Civ. P. 23, include whether there was "both an ascertainable class and a well-defined community of interest among the class members." *Linder v. Thrifty Oil Co.*, 23 Cal. 4th 429, 435 (2000), as modified (Aug. 9, 2000). "The community of interest requirement involves three factors: '(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.'" *Id.* (internal citation omitted).

The residency of prospective class members is highly relevant to each of these issues. In the motion to deny certification, Defendant argued that certification of a nationwide class was improper because the interests in enforcing consumer protection and warranty laws vary from state to state. In support of this position, Defendant cited cases decided under Oregon and Texas law. *Id.* at 240.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV16-04103 JAK (JCx) | Date | November 17, 2016 |
|---|---|---|---|
| Title | Ryan Vigil v. Irwin Naturals, et al. | | |

Also in connection with the motion to deny certification, Defendant presented testimonials from individual customers who had used the product. One was provided by a consumer who stated that he had purchased the product "here in Ohio." Dkt. 1-13 at 138. The same testimonial states: "I sent my brother a bottle of your product, I got from Walgreens, to him in [P]earl [H]arbor, HI." *Id*. This evidence is inconsistent with Defendant's claim that it did not know until recently that members of the putative class were citizens of states other than California or Nevada.

Discovery was also conducted while the action was pending in the Superior Court. It included depositions (Dkt. 1-5), and certain written discovery. Dkt. 1-6, Dkt. 1-7. During the Superior Court proceedings, Defendant was represented by Blank Rome LLP, a firm that describes itself as "one of America's largest law firms." Blank Rome, www.blankrome.com (last visited November 15, 2016).[1] The website also states that the firm has a substantial practice in complex civil litigation, including the defense of consumer class actions.[2] The presence of such counsel provides strong support for the view that, throughout the pendency of the Superior Court proceedings, Defendant was in a position to consider and determine whether prospective class members were citizens of states other than California and Nevada, thereby providing a basis for jurisdiction under CAFA.

The scope and nature of these proceedings also raises issues as to when Defendant had reason to know that the putative class included citizens of states other than California and Nevada. As stated in the Notice of Removal and the supporting declarations, Defendant distributes Libido-Max nationwide, both through third party retailers and by direct online and telephone sales to consumers. Green Decl., Dkt. 1-15 ¶ 15. Defendant also claims that, during the relevant time period, it "sold well over one million units of Libido-Max for a wholesale dollar value of well over $10,000,000." Removal Notice, Dkt. 1 ¶ 16. In light of these circumstances, common sense raises significant questions about Defendant's claim that, until May 10, 2016, it did not realize that the product was being sold to citizens of any one of 48 states, *i.e.,* of any state other than California and Nevada.

Defendant contends that most of its sales of the product are made at the wholesale level to retailers who in turn sell to consumers. From this it contends that it would not necessarily know the locations of consumers who purchased the product. In support of this position, it has presented the declaration of Mark Green, its Chief Financial Officer. Green Decl., Dkt. 1-15. Green states that Defendant does not

---

[1] Defendant has since substituted its present counsel in place of Blank Rome.
[2] The website includes the following statement about the firm's experience in class action litigation:

> Our class action litigators have successfully defended claims brought by putative class members involving product liability, mass tort, antitrust, consumer fraud, employment, RICO, securities, and data privacy and communications across various industries in every facet of national, regional, and state class actions, many of which were high-profile cases that implicated tens or hundreds of millions of dollars in potential liability. We are also well known for supervising the administration of class action settlements with classes comprising millions of members.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-04103 JAK (JCx) | Date | November 17, 2016 |
| Title | Ryan Vigil v. Irwin Naturals, et al. | | |

gather or maintain information as to the citizenship of those consumers who either purchase the product from retailers across the United States, or directly from Defendant. *Id*, ¶ 4. He then adds:

As part of the sales process, [Defendant] obtains the shipping information from the consumers. [Defendant] does not determine whether the person making the purchase will be the one consuming the product; it does not determine whether the shipping address is also the place of citizenship of the person who will consume the product; and it does not determine whether the person who will consume the product will change his place of citizenship at any particular time. Thus, [Defendant] neither requests nor is provided with a consumer's state of citizenship at the time of purchase, or at any other time. [Defendant] certainly never requested or recorded what any individual consumer's state of citizenship would be on October 17, 2014.

*Id*. In sum, Defendant contends that a consumer could live or shop in one state, but be a citizen of another. Dkt. 1-15.

In a supplemental declaration (Dkt. 14-1), Green clarified his earlier statements. He acknowledged that Defendant "knows that it sells and ships product to retailers in multiple states," and further "makes limited direct sales of Libido-Max for Men to consumers through its website and customer service telephone lines." *Id*. ¶¶ 3-4. Defendant has the shipping addresses of such customers. However, Green again declares that Defendant does not request the state of citizenship of any customer.

This evidence is unpersuasive on the issue of the timing of removal and the representations that accompanied it. Defendant knew that its product was purchased by consumers throughout the United States. The website of Applied Nutrition Inc., appliednutrition.com, appears to permit shipping throughout the United States. Applied Nutrition, appliednutrition.com (last visited November 15, 2016). Similarly, the website of Irwin Naturals, www.irwinnaturals.com, includes a "direct purchase" feature that allows customers throughout the United States to order products directly from Defendant. Irwin Naturals, www.irwinnaturals.com (last visited November 15, 2016). The website also includes a retail "store locator" that permits consumers to find a local, "brick and mortar" retailer that sells Defendant's products by entering any zip code in the United States. There are links to retail stores in every one of the 48 states at issue, *i.e.,* other than California and Nevada. Although these findings were made in November of 2015, rather than the time of removal, they are relevant to the scope and nature of Defendant's distribution network.

The website also states that Defendant's "products are available at Fine Health Food Stores Everywhere." Green's declaration presented in support of removal states that, based on an assessment of the relevant sales and shipment data, "nearly 90 percent of all purchasers" are likely to be citizens of states other than California. Dkt. 1-15 ¶ 8. Green also declares that "it is very likely that over 80 percent of end-user individual purchasers in the United States did not purchase Libido-Max in California or Nevada and are not citizens of California or Nevada." *Id.* Once again, this supports the logical inference that this information was very much available to Defendant from the outset of the Superior Court proceedings.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-04103 JAK (JCx) | Date | November 17, 2016 |
| Title | Ryan Vigil v. Irwin Naturals, et al. | | |


That Defendant did not request or maintain information about the states of citizenship of its many customers has little effect on the analysis. It is unreasonable to assume that all consumers who purchased the product through retailers located throughout the country were citizens of only California or Nevada. Further, Green estimates that Defendant has "sold well over one million units of Libido-Max.'" Dkt. 1-15 ¶ 7. This makes it likely that there have been a large number of unique purchasers.

The determination of the citizenship of a natural person is not a complex issue. It is decided by the domicile of the person, *i.e.,* the state in which the person resides and intends to remain. *See, e.g., Lew v. Moss*, 797 F.2d 747, 749 (9th Cir.1986). In light of this standard, Defendant's assertion that it did not know sooner that putative class members were citizens of states other than Nevada and California is not credible.

The Moenckmeier Declaration, which was signed on September 22, 2016, states: "[t]he closest Irwin came to obtaining "clues" as to putative class members' citizenship was when it collected and produced letters and emails from individual consumers reporting either satisfaction (i.e., positive testimonials) or dissatisfaction (i.e., requests for refunds, notifications of product defects, or reports of negative physical reactions) with the Libido-Max for Men product." Dkt. 14-2 at 3. This statement is not persuasive as to the good faith issue that is presented. There is no reasonable basis to assume that there is more evidence of citizenship based on the addresses associated with those who gave positive or negative reviews, than from evidence of the addresses of those who purchased the products. Further, as noted above, the same or very similar information was presented by Defendant in support of its motion to deny class certification, which was filed in the Superior Court on October 8, 2015.

These conclusions are also supported by the absence of certain evidence. Notwithstanding the inquiries at the time that the supplemental briefing was ordered, Defendant has not explained what prompted it to conduct the recent, pre-removal inquiry through which Lloyd Smith and Kurt Schultz were identified as putative class members, or explained specifically how they were identified. Further, Defendant submitted no information as to whether it has sales or marketing personnel with responsibility for one or more of the 48 states at issue. Nor did it provide information about its promotional or advertising efforts that may be directed to one or more of these states.

In support of its position that the timing of removal was appropriate, Defendant cites *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). *Kanter* held that, "[a]bsent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties." *Kanter* was not a class action. There, in the notice of removal, the defendant failed to state the citizenship of its corporate co-defendants. *Id.* The present case presents a different issue: Whether the basis presented for the timing of removal was made in good faith. Thus, whether Defendant knew or reasonably should have known long before the removal that a few members of the putative class were citizens of states other than California and Nevada.[3]

---

[3] Defendant also cites *Ruano v. Sears Roebuck & Co.*, 2015 WL 6758130, at *2 (C.D. Cal. Nov. 5, 2015). It upheld

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV16-04103 JAK (JCx) | Date | November 17, 2016 |
| Title | Ryan Vigil v. Irwin Naturals, et al. | | |

\* \* \*

For the foregoing reasons, Defendant has not established that the basis stated for its delayed removal was made in good faith. In light of the requirements of good faith that arise from Rule 11, that are inherent in the standards of practice in the federal courts, and that carry over to sworn declarations submitted at the time of removal, it is not appropriate to exercise CAFA jurisdiction in this matter. To do so would be to reward conduct that is not consistent with these requirements, and may well have been pursued in anticipation of a potential objection to the late removal.

### IV.    Conclusion

For the reasons stated in this Order, this action is **REMANDED** to the Los Angeles Superior Court at its Central Civil West Courthouse (Case No. BC560924).

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | ak |

---

the removal six months after the commencement of litigation brought by a putative class of "all individuals in the state of California that purchased an HVAC system from Defendant." *Id*. Plaintiffs there argued that the defendant "should have known that a putative class that includes thousands of people who purchased HVAC systems in California would include at least one California citizen." *Id*. The court disagreed, finding that, although Defendant was on notice of where plaintiffs lived, it was not on notice of the states where they were citizens. *Id*. Even if *Ruano* were binding, the facts presented here warrant a different outcome as to Defendant's likely knowledge about the citizenship of certain members of the putative class.